# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 15-848V
Filed: March 10, 2017

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| SHEILA GOINS, | * |
| | * |
| Petitioner, | * |
| v. | *   Ruling on the Record; |
| | *   Insufficient Proof of Vaccine |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |

* * * * * * * * * * * * * * * * * * * *

*Leah VaSahnja Durant*, Esq., Law Offices of Leah V. Durant, Washington, DC, for petitioner
*Alexis B. Babcock*, Esq., U.S. Department of Justice, Washington DC, for respondent.

### DECISION[1]

**Roth**, Special Master:

On August 10, 2015, Sheila Goins ["petitioner" or "Ms. Goins] filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ["Vaccine Act" or "Program"]. The petition alleges that Ms. Goins suffers from neurological symptoms and Guillain-Barre Syndrome ("GBS") caused by an influenza ("flu") vaccination received on August 8, 2012. Petition at ¶¶ 1, 3-4. The petition further alleges that Ms. Goins' injuries persisted for more than six months. *Id.* at ¶ 6.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)).  In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B).  Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision.  If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

For the reasons stated herein, I find that the petitioner has failed to provide proof of vaccination and thus, the case is dismissed.

## I. Procedural History

Ms. Goins filed her petition on August 10, 2015. Petition ("Pet"), ECF No. 1. This case was assigned to Chief Special Master Dorsey.[3] An initial status conference was conducted on October 1, 2015. Order, issued Oct. 1, 2015, ECF No. 8.

On October 2, 2015, petitioner filed her medical records. *See generally*, Petitioner's Exhibits ("Pet. Ex.") 1-7. Petitioner filed a Statement of Completion on October 6, 2015. Pet. Statement of Completion, ECF No. 10. A status conference was held on November 18, 2015. Petitioner advised that she was unable to locate a record of her influenza vaccination. She requested additional time to either produce some account of the vaccination or request a motion for a ruling on the record or a motion for a voluntary dismissal. Petitioner was ordered to file a status report by December 18, 2015 regarding her efforts to provide documentation of her vaccination. Order, issued Nov. 18, 2015, ECF No. 13 at 1.

Petitioner filed a status report ("Pet. S.R.") on December 18, 2015 stating that petitioner was still gathering evidence to prove administration of vaccination, but would require an additional 30 days. Pet. S.R., ECF No. 14, at 1. Petitioner was ordered to file a status report by January 21, 2016, updating the court on her efforts. Non-PDF Order, issued Dec. 21, 2015.

On January 21, 2016, petitioner filed four affidavits in support of her petition. Pet. Ex. 8-11, ECF No. 15.

At a status conference held on February 8, 2016, the parties discussed the affidavits. There remained a lack of any supporting documentation showing the administration of an influenza vaccine. Respondent's counsel raised concerns that this case lacked reasonable basis. I ordered petitioner to file the hospital's billing records for the charges for petitioner's hospitalization in August of 2012. Order, issued February 8, 2016, ECF No. 16, at 1.

On March 10, 2016, petitioner filed a Motion for Extension of Time ("MFET") in order to obtain the billing records from the hospital. MFET; ECF No. 17. The motion was granted, extending the deadline until March 30, 2016. Non-PDF Order, issued Mar. 10, 2016.

On March 30, 2016, petitioner filed Medicare/CMS billing records for 2011 and 2012. Pet. Ex. 12-13, ECF No. 18. The August 2012 billing records showed billing for petitioner's gallbladder surgery, post-surgical follow-ups, and hospital stays at Skyridge and Memorial Hospital. There was no billing record reflecting an influenza or any other vaccination administered to petitioner in August of 2012. *See* Pet. Ex. 12 at 3-8, ECF No. 18.

The Medicare/CMS billing record for 2011 contained a charge for the influenza vaccine petitioner received on December 9, 2011. *Id.* at 8. Petitioner did not file any billing records generated directly from Tennova Healthcare Cleveland (formerly Skyridge Medical Center).

---

[3] This case was reassigned to Special Master Roth on October 20, 2015.

A status conference was held on May 17, 2016. The billing records from Medicare/CMS were discussed. Respondent's counsel stated that an investigation into records of the Center for Disease Control ("CDC") showed that there were no flu vaccines available in August of 2012. Respondent's counsel was ordered to file the CDC records referred to. Petitioner's counsel requested a fact hearing. Petitioner was ordered to file statements from her physician regarding whether petitioner received a flu vaccination on August 8, 2012. Counsel were to consult and file a joint status report regarding hearing dates and location. Order, issued May 17, 2016, ECF No. 20.

On June 13, 2016, respondent filed the 2012 -2013 Seasonal Influenza Vaccine Dose Distribution Schedule from the CDC showing that the influenza vaccine was not available until September 7, 2012. Resp. Ex. A, ECF No. 21.

Petitioner filed a joint status report ("Joint S.R.") on July 18, 2016 stating that parties were available for a fact hearing in April of 2017 at the federal courthouse in Chattanooga, Tennessee. Joint S.R., ECF. No. 22.

Petitioner requested and was granted two motions for extensions of time, on July 18, 2016 and on September 2, 2016, to secure proof of vaccination. Petitioner was unable to locate any documentary proof that she received an influenza or any vaccination in August of 2012.

On October 2, 2016, petitioner filed a Motion to Issue a Subpoena on Tennova Healthcare. Petitioner was seeking all medical records pertaining to petitioner as well as vital statistics relating to the type and number of flu vaccinations administered at the hospital during August of 2012. ECF No. 26. That motion was granted. Order, issued Oct. 3, 2016, ECF No. 27.

On November 22, 2016, petitioner filed the documents received from Tennova Healthcare in response to the subpoena. The documents from Tennova confirmed that no influenza vaccinations were administered at the hospital in August of 2012 to petitioner or any other patients. Pet. Ex. 14, ECF No. 29.

A status conference was held on November 22, 2016. The parties discussed the records filed from Tennova Healthcare. Petitioner's attorney agreed that there was no proof of vaccination in this case and requested time to file a Motion for a Ruling on the Record. A Motion for a Ruling on the Record was to be filed no later than January 27, 2017. Order, issued Nov. 22, 2016, ECF No. 30.

Petitioner filed her Motion for a Ruling on the Record on January 27, 2017. ECF No. 31. Respondent filed its response on February 10, 2017. Resp. Response, ECF No. 32.

This matter is now ripe for decision.

## II. Relevant Medical History

**A. Petitioner's Health Prior to the Alleged Casual Vaccination**

Petitioner was born on May 3, 1967. Petitioner's medical history was significant for chronic migraines, chronic back pain, left knee pain/osteoarthritis, right leg and foot paresthesias, chest pain, hypertension, gastroesophageal reflux disorder ("GERD"), anxiety, depression, fatigue and bipolar disorder. She smoked about a pack a cigarettes per day for 27 years. *See generally,* Pet. Ex. 4 at 31; 42-63.

On December 9, 2011, petitioner presented to her primary care physician, Dr. Campbell with complaints of chronic back pain, migraines, fatigue, sore throat, mild cough and gastrointestinal symptoms. She received an influenza vaccine. *Id.* at 2; 36-37.

On January 11, 2012, petitioner presented to Dr. Campbell with multiple complaints, including right foot pain that was gradual over the past 5 days, very severe last night, pain of the right great toe and pain all over. Petitioner complained that even her skin hurts and the pain goes "down to the muscles and even the bones." *Id.* at 33-34.

On March 21, 2012, petitioner presented to Dr. Campbell for follow up of acute and chronic issues. She had a sore throat with occasional shortness of breath, dry cough, nausea, fever and headaches with muscle aches. She was prescribed Augmentin and Tylenol for pain. She was told to rest. *Id.* at 30-31.

On August 5, 2012, petitioner presented to the emergency room at Skyridge with severe abdominal pain. She was admitted the same day and diagnosed with cholelithiasis and cholecystitis.[4] On August 6, 2012, petitioner had emergency gallbladder surgery. There were no complications and she was discharged on August 8, 2012 with instructions to follow up the week after surgery. *See generally*, Pet. Ex. 7.

**B. Petitioner's Health After the Alleged Vaccination**

Petitioner alleges that she received an influenza vaccination at the time of her discharge from Skyridge on August 8, 2012. Pet. at ¶¶ 1, 3-4; Pet. Ex. 8 at 1.

On August 16, 2012, petitioner presented to Dr. Knabb for a follow up appointment as directed. Pet. Ex. 7 at 1. The records state that the petitioner is "doing well." *Id.* at 2. Her incisional sites were noted to be healing. A scattered rash believed to be from IV antibiotics received at the hospital was noted on her body. She noted discomfort in her mouth, thought to be thrush. *Id.* at 2. There was no fever, no disorientation, no discoordination, no joint pain, no weakness or dizziness. Petitioner had normal range of motion. *Id*. She was encouraged to continue using Benadryl for the rash. *Id.* at 3.

---

[4] Cholecystitis is inflammation of the gallbladder. STEDMAN'S POCKET MEDICAL DICTIONARY 137 (1st ed. 1987).

On August 20, 2013, petitioner was examined by Dr. Petersen at Dr. Campbell's office. She was noted to be 9 days post-surgery with complaints of sinus pressure and congestion, irritation of the eyes, dizziness and constipation. Pet. Ex. 4 at 26-28. Petitioner denied any neurologic changes, seizures, numbness, weakness, tingling, or visions problems. *Id.* at 26. Dr. Petersen's assessment was hypertension, constipation status post cholecystectomy, and allergic rhinitis. *Id.* at 26-27. She was instructed to restart her blood pressure medication. *Id.* at 26.

On August 23, 2012, petitioner returned to Skyridge complaining of body pain, general fatigue, and numbness in her feet that had progressed up to her knees. Pet. Ex. 5 at 5. Blood work and CT scan were unremarkable. Petitioner was transferred to Memorial Hospital for further neurological monitoring. *Id.* at 8. Petitioner was admitted to the ICU at Memorial Hospital for observation for possible Guillain-Barre syndrome ("GBS"). She was noted to be stable, breathing comfortably, but was having difficulty forming a seal for sipping water. She complained of diffuse pain, as well as significant anxiety. *Id.* at 5. Petitioner denied any recent vaccinations. *Id.* Petitioner remained hospitalized for four days while her swallowing was monitored. *Id.* She was reassessed on August 31, 2012, and given a soft diet and liquids. *Id.* She was discharged from Memorial Hospital on September 1, 2012 and sent to Siskin for physical, occupational and speech therapy with a diagnosis of GBS. *Id.* at 5, 10.

### III. Evaluating Petitioner's Claim

**A. Legal Standard**

Under the Vaccine Act, a petitioner may prevail on her claim by proving a "Table" injury, in which causation is presumed or, alternatively, by proving an "off-Table" injury, in which she identifies a causal link between the vaccine and the injury alleged. 42 U.S.C. §300aa (2012). Providing proof of vaccination is a threshold matter in order to prevail under either theory. 42 U.S.C. §300aa-11(c)(1)(A) and (B). Petitioner must show by a preponderance of the evidence that the vaccine in question was administered. § 300aa–11(b)(1)(A). A special master shall assess "the record as a whole" and may not "find that a petitioner received a vaccine 'based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.'" *Rich v. Sec'y of Health & Human Servs.*, No. 12-742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013) (quoting 42 U.S.C. §300aa-13(a)(1)). Although contemporaneous medical records as proof of vaccination is the best evidence, the records are not an absolute requirement. *See Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995). In the absence of contemporaneous proof of vaccination administration, special masters have also found that other medical records which reference vaccine receipt may be sufficient. *See Lamberti v. HHS,* No. 99–507V, 2007 WL 1772058 at *7 (Fed. Cl. Spec. Mstr. May 31, 2007); *Groht v. HHS,* No. 00–287V, 2006 WL 3342222 at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006). "In addition to corroborative medical records, lay testimony has been found to be a sufficient basis for finding that a vaccine was administered as alleged." *Rich*, 2013 WL 4476751, at *2 (citing *Alger v. HHS,* No. 89–31V, 1990 WL 293408 at *2, 7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990)).

### B. Evaluating Petitioner's Claim

#### 1. Affidavits

Petitioner provided her own affidavit and the affidavits of her daughter, her mother, and friend to support her claim of having received an influenza vaccine on August 8, 2012. Pet. Ex. 8-11.

Petitioner stated in her affidavit that while she was getting ready to be released on August 8, 2012 from Skyridge, a nurse asked her if her tetanus and flu shots were up to date. Pet. Ex. 8 at 1. She responded that her flu shot was not up to date. *Id*. The nurse left and returned with a flu shot and asked which arm she wanted the shot in. *Id*. Petitioner stated she wanted the shot in her left because she is right handed and always gets a shot in her left. *Id*.

Petitioner's daughter, Cayla Maria Goins, submitted an affidavit. Pet. Ex. 10. Cayla stated that she recalled that day because she had just gotten her learner's permit and was excited to drive. Pet. Ex. 10 at 1. Cayla stated that a nurse came to speak with her mother just prior to her discharge and asked if her tetanus and flu shots were up to date. *Id*. She recalled her mother stating that the tetanus was but not the flu shot. *Id*. Cayla stated the nurse returned 45 minutes later and gave her mother a flu shot in her left arm in her presence. *Id*.

Petitioner's mother, Mary Coffey, submitted an affidavit. Pet. Ex. 11. Ms. Coffey stated that she was present in the hospital on August 8, 2012, but not present in the room when petitioner received the flu vaccine, because she was asked to leave the room so petitioner's drainage tube could be removed. Pet. Ex. 11 at 1. Ms. Coffey recalled a nurse asking petitioner if she was up to date on her vaccines and petitioner saying she had not had the flu shot. *Id*. She stated the nurse left the room to prepare the vaccine. *Id.*

Petitioner's friend, Jewell Henry, submitted an affidavit. Pet. Ex. 9. Ms. Henry stated that she had a clear recollection of that day when petitioner received a flu shot "because she was already so sick." Pet. Ex. 9 at 1. Ms. Henry was not in the room when petitioner was given the vaccination but recalls the petitioner telling her that the vaccine really hurt. *Id.*

#### 2. Billing Records and Other Documentation

Although contemporaneous medical records are the preferred proof for showing the administration of a vaccination, special masters may find proof of vaccination through other reliable evidence. *See Centmehaiey,* 32 Fed. Cl. at 621. However, when circumstantial testimony has been used, testimony from the administering physician was used to support the claim. *See Alger v. HHS,* No. 89-31V, 1990 WL 293408 at *7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990) (finding that affidavits, backed up by oral testimony of both a parent and physician who administered the vaccine to be "more than adequate to support a finding that the vaccine was administered."). Alternatively, a petitioner can use lay testimony that is corroborated by medical or billing records that refer back to the vaccination at issue. *See Lamberti v. Sec'y of Health & Human Servs,* No. 99–507V, 2007 WL 1772058, at *7.

6

Petitioner obtained billing records for her medical care in 2011 and 2012 which failed to provide support for her claim that she received an influenza vaccine or any vaccination in August of 2012. The records showed that she received an influenza vaccine on December 9, 2011. Pet. Ex. 13 at 3, 8; *see generally,* Pet. Ex. 12.

The documents filed in response to a subpoena served on Tennova Healthcare show not only that there were no influenza vaccinations administered at the hospital in August 2012, but that upon petitioner's admission and discharge, records documented that she had been "previously immunized this flu season," and was not given an influenza vaccine "due to [it] no longer [being] influenza season." Pet. Ex. 14 at 2-3.

Though ordered to do so, there was no corroborating affidavit from any physician, nurse or other medical professional that an influenza vaccination had been administered.

Due to the absence of contemporaneous medical records, or any persuasive documentation, petitioner has failed to meet the preponderance of the evidence standard required to show administration of a vaccination in August of 2012. *See Lamberti,* No. 99–507V, 2007 WL 1772058 at *7; *Groht,* No. 00–287V, 2006 WL 3342222 at *2; § 300aa–11(b)(1)(A).

### IV. Conclusion

The petitioner herein has failed to produce evidence of vaccination and thus failed to demonstrate entitlement to compensation. **Her petition is therefore dismissed. The clerk shall enter judgment accordingly.**

**IT IS SO ORDERED.**

<u>s/Mindy Michaels Roth</u>
Mindy Michaels Roth
Special Master