# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 15-848V
Filed: January 10, 2018

```
* * * * * * * * * * * * * *
SHEILA GOINS,                    *        UNPUBLISHED
                                 *
            Petitioner,          *
v.                               *        Decision on Attorneys' Fees and Costs;
                                 *        Reasonable Basis; Proof of Vaccination;
SECRETARY OF HEALTH              *        Hourly Rate
AND HUMAN SERVICES,              *
                                 *
            Respondent.          *
* * * * * * * * * * * * * *
```

*Leah Durant, Esq., Law Offices of Leah V. Durant, PLLC, Washington, D.C., for petitioner.*
*Alexis Babcock, Esq., U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On August 10, 2015, Sheila Goins ("Ms. Goins," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that she developed Guillain-Barre Syndrome as a result of receiving an influenza vaccination on or before August 8, 2012. *See* Petition ("Pet."), ECF No. 1. On January 17, 2017 petitioner filed a motion for a ruling on the record. *See* Motion, ECF No. 31. On March 10, 2017, the undersigned issued a Decision dismissing petitioner's claim. *See* Decision, ECF No. 33. Pursuant to Section 15(e) of the Vaccine Act, petitioner's counsel now seeks an award of attorneys' fees and costs. After careful consideration, the undersigned determined to **grant the request in part** for the reasons set forth below.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Facts

### A. Petitioner's Health Prior to the Alleged Receipt of Vaccination

Petitioner was born on May 3, 1967. She had a history of chronic migraines, chronic back pain, left knee pain/osteoarthritis, right leg and foot paresthesias, chest pain, hypertension, hyperlipidemia, gastroesophageal reflux disorder ("GERD"), anxiety, depression, fatigue, and bipolar disorder. She smoked about a pack a cigarettes per day for 27 years. *See generally* Pet. Ex. 4 at 31; 42-63.

On December 9, 2011, petitioner presented to her primary care physician, Dr. Campbell, complaining of chronic back pain, migraines, fatigue, sore throat, mild cough, and gastrointestinal symptoms. She received an influenza vaccine. Pet. Ex. 4 at 2; 36-37.

On January 11, 2012, petitioner presented to Dr. Campbell complaining of right foot pain that gradually became worse over the past five days before becoming "very severe last night." Pet. Ex. 4 at 33-34. Petitioner complained of pain in her right great toe and pain all over. *Id*. She complained that "even her skin hurts" and that the pain went "down to the muscles and even the bones." *Id*.

On March 21, 2012, petitioner presented to Dr. Campbell for follow up of acute and chronic issues. She had a sore throat with occasional shortness of breath, dry cough, nausea, fever, and headaches with muscle aches. She was prescribed Augmentin and Tylenol for pain, and told to rest. *Id*. at 30-31.

On August 5, 2012, petitioner presented to the emergency room at Skyridge Medical Center ("Skyridge") with severe abdominal pain. She was admitted and diagnosed with cholelithiasis and cholecystitis. On August 6, 2012, petitioner had emergency gallbladder surgery. There were no complications, and she was discharged on August 8, 2012 with instructions to follow up the week after surgery. *See generally* Pet. Ex. 7.

### B. Petitioner's Health After the Alleged Receipt of Vaccination

Petitioner alleged that she received an influenza vaccination at the time of her discharge from Skyridge on August 8, 2012. Pet. at ¶¶ 1, 3-4; Pet. Ex. 8 at 1.

On August 16, 2012, petitioner presented to Dr. Knabb for a follow up appointment as directed. Pet. Ex. 7 at 1. The records state that the petitioner is "doing well." *Id*. at 2. Her incision sites were healing, and she had a scattered rash which was attributed to IV antibiotics that she received at the hospital. Petitioner complained of discomfort in her mouth, which was thought to be thrush. *Id*. Petitioner did not complain of fever, disorientation, discoordination, joint pain, weakness, or dizziness. She had normal range of motion. *Id*. She was encouraged to continue using Benadryl for the rash. *Id*. at 3.

On August 20, 2012, petitioner presented to Dr. Petersen at her primary care practice. Petitioner was 9 days post-surgery and complaining of sinus pressure and congestion, irritation

of the eyes, dizziness, and constipation. Pet. Ex. 4 at 26-28. Petitioner denied neurologic changes, seizures, numbness, weakness, tingling, or vision problems. *Id*. at 26. Dr. Petersen's assessment was hypertension, constipation status post cholecystectomy, and allergic rhinitis. *Id*. at 26-27. She was instructed to restart her blood pressure medication. *Id*. at 26.

On August 24, 2012, petitioner returned to Skyridge complaining of body pain, general fatigue, and numbness in her feet that had progressed up to her knees. Pet. Ex. 5 at 5. Bloodwork and a CT scan were unremarkable. Petitioner was transferred to Memorial Hospital and admitted to the ICU for possible Guillain-Barre syndrome ("GBS"). Petitioner denied any recent vaccinations. *Id*. She was discharged from Memorial Hospital on September 1, 2012 with a diagnosis of GBS. *Id*. at 70.

## II. Procedural History

The petition was filed on August 10, 2015, on the eve of the statute of limitations. Petition, ECF No. 1. The petition stated that petitioner contacted counsel on August 5, 2015, shortly before the statute of limitations on petitioner's claim was set to expire. *Id*. at 2.

The initial status conference was held on October 1, 2015. Scheduling Order, ECF No. 8. Counsel for petitioner advised that complete medical records could be filed by October 2, 2015. *Id*. at 1. Respondent was ordered to file a status report noting any outstanding records and indicating his position by November 16, 2015. *Id*.

This case was reassigned to me on October 19, 2015. ECF No. 11. A status conference was held on November 18, 2015, during which petitioner's counsel indicated that she had been unable to locate petitioner's vaccination record. Scheduling Order at 1, ECF No. 13. Petitioner's counsel requested additional time to either produce proof of vaccination or file a motion for a ruling on the record or a voluntary dismissal. *Id*. Petitioner was ordered to file a status report by December 18, 2015, regarding her ability to provide documentation of her vaccination. *Id*.

Petitioner filed a status report ("Pet. S.R.") on December 18, 2015, stating that she was still gathering proof of vaccine administration. Pet. S.R. at 1, ECF No. 14. Petitioner was ordered to file another status report in thirty days. Non-PDF Order, issued Dec. 21, 2015.

On January 12, 2016, petitioner filed a status report as well as affidavits from petitioner, her daughter, her mother, and a family friend, and stated that all four affiants "were present at the time petitioner's flu shot was administered." Pet. S.R. at 1, *see also* Pet. Ex. 8-11, ECF No. 15. Petitioner's counsel asserted "that the aforementioned affidavits conclusively demonstrate that petitioner did in fact receive the flu vaccination on the date of her discharge from the hospital" and indicated that all four witnesses would be available to testify at a fact hearing on this matter. Pet. S.R. at 1, ECF No. 15.

A status conference was held on February 8, 2016. Scheduling Order, ECF No. 16. Concerned about the lack of medical records documenting the administration of the vaccine, respondent's counsel noted that the case may lack a reasonable basis. *Id*. at 1. Petitioner was

ordered to file the hospital billing records, including all charges for August 8, 2012, which, it was expected, would show whether petitioner was charged for an influenza vaccine. *Id*.

Petitioner filed a Motion for Extension of Time within which to produce the documents on March 10, 2016, which was granted. ECF No. 17.

On March 30, 2016, petitioner filed the billing records from the hospital which failed to show that petitioner received any vaccine during that hospitalization. Pet. Ex. 12-13, ECF No. 18. At a status conference held on May 17, 2016, the parties discussed the billing records. Scheduling Order at 1, ECF No. 20. The undersigned noted that there was no proof of vaccination in the record as a whole. *Id*. Petitioner's counsel requested a fact hearing so that petitioner could testify to her receipt of the vaccine. While respondent's counsel did not object to a hearing, she reserved the right to contest reasonable basis and mentioned that petitioner's fees and costs, particularly for a hearing, may not be reimbursed. *Id*. Petitioner was ordered to file statements from her treating physicians regarding whether she received the influenza vaccine. *Id*. at 2. Respondent stated that there were no influenza vaccines available in August of 2012. Respondent was ordered to file documentation about the influenza vaccine schedule for 2012 to 2013 from the CDC. *Id*. Finally, the parties were ordered to file a Joint Status Report regarding potential hearing dates and locations. *Id*.

On June 13, 2016, respondent filed the "Seasonal Influenza Vaccine Dose Distribution Schedule for 2012-13," which indicated that the CDC began distributing the seasonal influenza vaccine on September 7, 2012. Resp. Ex. A at 2, ECF No. 21.

Petitioner filed a joint status report ("Pet. J.S.R.") on July 18, 2016, advising that the parties were available for a fact hearing during April of 2017, and proposed that the hearing take place in Chattanooga, Tennessee. Pet. J.S.R. at 1, ECF No. 22.

Petitioner requested and received two extensions of time within which to file statements from her treating physicians regarding her receipt of the influenza vaccine before filing a motion to issue a subpoena on October 2, 2016, which was granted. *See* MFET, ECF No. 23; MFET, ECF No. 24; Motion to Issue Subpoena, ECF No. 26; Order authorizing subpoena, ECF No. 27.

On October 17, 2016, petitioner's counsel filed a status report advising that the subpoena had been served on Tennova HealthCare, and a representative from Tennova contacted petitioner's counsel to inform her that the hospital did not have any record of petitioner receiving an influenza vaccination during August of 2012. Pet. S.R. at 1-2, ECF No. 28. Furthermore, the representative advised petitioner's counsel that the hospital did not administer any influenza vaccines to anyone during the month of August 2012. *Id*. at 2. Petitioner filed the records from Tennova Health Care, confirming the foregoing, as Pet. Ex. 14. ECF No. 29. Following a status conference held on November 22, 2016, petitioner was ordered to file a motion for a ruling on the record by January 27, 2017. Scheduling Order at 1, ECF No. 30.

Petitioner filed a Motion for Judgment on the Administrative Record on January 27, 2017. ECF No. 31. A decision was issued dismissing the petition on March 10, 2017. Decision, ECF No. 33.

On October 8, 2017, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 36. Petitioner requests attorneys' fees in the amount of $23,626.00, and attorneys' costs in the amount of $2,222.39, for a total amount of $25,848.39. *Id.* at 1.  In accordance with General Order #9, petitioner's counsel represents that petitioner did not incur any out-of-pocket expenses. *Id.*

On October 19, 2017, respondent filed a response to petitioners' Motion for Fees, submitting that, because "petitioner was never able to establish that she received a covered vaccination…the Petition lacks reasonable basis." Response at 2, ECF No. 37.

Petitioner filed a reply on October 26, 2017, arguing that the four affidavits filed by petitioner constituted sufficient proof of vaccination so as satisfy the reasonable basis requirement. Reply at 12-14, ECF No. 38. Petitioner further requested supplemental attorneys' fees in the amount of $4,356.50 for her reply. Reply at 16.

This matter is now ripe for decision.

### III. Applicable Law and Analysis

**A.     Good Faith and Reasonable Basis**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1).  If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic.  *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013).  However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed.  § 15(e)(1).

Reasonable basis is typically viewed as "an objective standard determined by the 'totality of the circumstances.'" *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). It does not look to the "likeliness of success but more to the feasibility of the claims." *Id.* at 285. "This totality of the circumstances assessment should take into account evidence available at the time a claim is filed and evidence that becomes available as the case progresses." *Cottingham v. Sec'y of Health & Human Servs.*, 2017 WL 4546579, at *7 (Fed. Cl. 2017). Accordingly, a case may have a reasonable basis when filed, but may lose reasonable basis during the pendency of the case. Petitioner's counsel has "an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham* at *7-8.

"Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs.*, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). Typically, reasonable basis is not found when "fundamental inquires [sic] are not made." *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). To ensure reasonable basis, an attorney should make a pre-filing inquiry into the claim, and it must be supported by medical records or medical opinion. *Mack v. Sec'y of Health & Human Servs.*, No. 15-149V, 2017 WL 5108680, at *3 (Fed. Cl. Spec. Mstr. Sep. 28, 2017) (internal citations omitted). While leniency has been shown when the

statute of limitations was about to expire, counsel may not use an impending statute of limitations deadline to establish reasonable basis for a claim. *Simmons v. Sec'y of Health & Human Servs.*, 2017 WL 5146179 at *3 (Fed. Cir. 2017).

Respondent argues that the petition lacked reasonable basis, noting that "petitioner never submitted proof that she had received a covered vaccination, as is required by the Vaccine Act." Response at 2. Respondent further noted that "although this concern was discussed at length during a status conference in May 2016 – and respondent specifically questioned whether the petition had a reasonable basis to proceed – petitioner continued to advocate for a fact hearing on this case." *Id.*

Petitioner argued that she had satisfied reasonable basis under both the "totality of circumstances" test from *Chuisano* and an "evidence-based" test, referring to the Federal Circuit's holding in *Perreira* that "special masters have discretion to find a lack of reasonable basis where a petitioner's claim is based solely on 'unsupported speculation.'" Reply at 6, 7, 11; *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Petitioner based this assertion on (1) the fact that the petition was filed on the eve of the statute of limitations; (2) counsel's continued efforts to procure proof of vaccination; and (3) the four affidavits submitted by petitioner, her daughter, her mother, and her friend.

The petition in this matter was filed on the eve of the statute of limitations. The billing records show that petitioner's first contact with Ms. Durant took place on August 7, 2015.[3] *See* Motion for Fees, Ex. 1, at 1. Based on the facts contained in the Petition as provided by petitioner, it is understandable why counsel filed this claim without a thorough pre-filing inquiry. I agree with petitioner that this claim initially had a reasonable basis when it was filed.

However, as time progressed, the ability to show proof of vaccination began to wane. During a status conference on November 18, 2015, Ms. Durant requested additional time to either produce proof of vaccination or file for a voluntary dismissal. That time was granted. When the medical records failed to support receipt of a vaccination, petitioner instead filed affidavits from herself, her daughter, her mother, and a friend. These affidavits were discussed in my Decision, noting that although petitioner's daughter stated that she was present when petitioner received the influenza vaccine, petitioner's mother and petitioner's friend admitted that they were not in the room. Decision at 6.

At the next status conference, held on February 8, 2016, respondent's counsel expressed concerns about reasonable basis. Ms. Durant was insistent in continuing her quest to secure proof of the vaccination, requesting time to secure billing records. *See generally*, Pet. Ex. 12-13. Despite a lack of evidence and a long discussion about proceeding any further in this matter, Ms. Durant demanded a fact hearing during a status conference on May 17, 2016. Respondent's

---

[3] The Petition states that petitioner contacted counsel on August 5, 2015. Pet. ¶9. In her Reply, Ms. Durant clarified that petitioner "first contacted counsel by phone outside of regular office on the evening of Wednesday, August 5, 2015. After multiple failed return phone calls, counsel made contact with petitioner on the morning [of] Friday, August 7, 2015. A formal intake of the claim was completed at that time." Reply at 2 fn. 1.

counsel cautioned Ms. Durant that petitioner's fees and costs may not be reimbursed for a fact hearing, or this matter in general.

On June 13, 2016, respondent filed documentation from the CDC showing that the influenza vaccines for the 2012-2013 season were first distributed in September of 2012 – several weeks after the date that petitioner allegedly received the influenza vaccine. *See* Resp. Ex. A. Nevertheless, Ms. Durant continued to advocate for a fact hearing, submitting a status report with potential dates for a hearing to be held in Tennessee, despite being told that for cost purposes, the hearing would be held by video conference in Washington, D.C. She also subpoenaed the hospital for any records relating to petitioner's receipt of the flu vaccine. Finally, after receiving a response from the hospital that they did not administer any flu vaccines in August of 2012, petitioner's counsel agreed to dismiss the case.

In her Motion for a Ruling on the Administrative Record, petitioner admitted my decision found that "the affidavit evidence was insufficient to overcome records that specifically indicated that petitioner did not receive a vaccine…after weighing all of the evidence in the record;" nevertheless, she continued to argue that the affidavits constituted sufficient evidence to meet the evidence-based standard for reasonable basis. Reply at 12. Petitioner cited *Alger v. Sec'y of Health & Human Servs.*, No. 89-31V, 1990 WL 293408, at *2, 7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990), which held that "lay testimony is a sufficient basis for finding that a vaccine was administered as alleged." Reply at 13. Petitioner asserted, "[t]he fact that the special master found the affidavits to be unpersuasive does not mean that the case lacked a reasonable basis based on a failure to present credible evidence." *Id*. at 14.

Pursuant to *Perreira*, reasonable basis may be denied where the claim is based on "unsupported speculation." *Perreira*, 33 F.3d at 1377. Here, the witness affidavits were given little value because there was absolutely no evidence of vaccination found in petitioner's medical records,[4] the Medicare billing records, or the hospital's internal records to support that petitioner received an influenza vaccine, or any vaccine, in August of 2012. Additional CDC records confirmed that the influenza vaccine was not yet released at that time.

Petitioner argues that she has met reasonable basis based on the totality of the circumstances by making reasonable efforts to locate the vaccine record, investigating other ways of proving vaccine administration, and following orders issued by the special master. Reply at 11. However, by the spring of 2016 it became clear that none of the records produced showed even a scintilla of evidence in support of petitioner having received an influenza vaccine or any vaccine. Despite these concerns, petitioner continued to advocate for a fact hearing, relenting only when informed by the hospital that no influenza vaccinations had been administered to petitioner or anyone in August of 2012. Based upon the circumstances as detailed above,[5] I find

---

[4] Upon presenting to the hospital for GBS symptoms, petitioner herself denied having recently received any vaccinations. Pet. Ex. 5 at 5.

[5] It is understandable that based upon the facts as told to counsel by petitioner on the eve of the statute, there was a reasonable basis upon which to file the Petition in this matter, as petitioner did develop GBS within three weeks of her "alleged" receipt of the influenza vaccine. However, other than petitioner and her family's word that she received an influenza vaccine, none of the medical records supported that claim. Reasonable basis cannot be found based upon "unsupported speculation." *Perreira*,

that reasonable basis for this claim ended on October 14, 2016, when counsel was advised by the hospital that no influenza vaccines were administered in August of 2012.

**B.    Evaluation of Requested Attorneys' Fees and Costs**

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

**1. Reasonable Hourly Rate**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

In this case, Ms. Durant practices in Washington, D.C. Therefore, forum rates apply in this case.

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323

---

33 F. 3d at 1377; *see also Sharp-Rountree v. Sec'y of Health & Human Servs*., No. 14-804, 2015 WL 12600336 (Fed. Cl. Spec. Mstr. Nov. 3, 2015) (Finding that a claim must be supported by medical records or medical opinion in order to have a reasonable basis).

(Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[6]

In this case, petitioner has requested hourly rates for Ms. Durant of $350 for work performed in 2015 and 2016, and $365 for work performed in 2017. The undersigned has reviewed the fee application and finds the hourly rates for 2015 and 2016 to be reasonable and consistent with the rates at which Ms. Durant and her paralegal, Ms. Raina, have been compensated in past cases. *See e.g., Terrell v. Sec'y of Health & Human Servs.*, No. 13-334V, 2017 WL 1130947, at *2 (Fed. Cl. Spec. Mstr. Mar. 2, 2017); *Dipietro v. Sec'y of Health & Human Servs.*, No. 15-742V, 2016 WL 7384131, at *4 (Fed. Cl. Spec. Mstr. Oct. 6, 2016); *McCloud v. Sec'y of Health & Human Servs.*, No. 16-719V, 2016 WL 8077964, at *2 (Fed. Cl. Spec. Mstr. Dec. 23, 2016).

However, the chief special master has recently set Ms. Durant's 2017 hourly rate at $363. *See Terrell*, 2017 WL 1130947, at *2. The undersigned finds the chief special master's reasoning to be persuasive, and hereby adopts the rates decided in *Terrell* as the rates for this analysis. Accordingly, Ms. Durant's 2017 hourly rate is reduced from $365 to $363. Therefore, Ms. Durant's fees for 2017 are reduced from $3,029.50 to $3,012.90.

## 2.    Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special

---

[6] The fee schedules are posted on the Court's website.  *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys -Forum-Rate-Fee-Schedule2015-2016.pdf (last visited October 11, 2017); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited October 11, 2017).

masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Counsel billed 55.3 hours at a rate of $350 and 8.3 hours at a rate of $365 for herself and 6.9 hours at a rate of $140 and 1.9 hours at a rate of $145 for her paralegal, Ashley Raina.

Based on the above determination that reasonable basis for this petition ended on October 14, 2016, Ms. Durant's hours have been reduced from 63.6 total hours to 52.6 hours at a rate of $350 and 7.2 hours at a rate of $363. This includes 4.2 attorney hours for drafting petitioner's Motion for a Ruling on the Record and 3 attorney hours drafting petitioner's application for attorneys' fees and costs. Motion for Fees at 12, ECF. No. 36-1. Ms. Raina's hours have been reduced from 8.8 total hours to 6.5 hours at a rate of $140 and 1.7 hours at a rate of $145. Therefore, the award of attorneys' fees and costs has been reduced from $23,626.00 to $22,180.10.

Petitioner billed an additional $4,356.50 in attorneys' fees for preparing her Reply in this matter. Counsel billed 11.3 hours at a rate of $365 for herself and 1.6 hours at a rate of $145 for her paralegal for a total of 12.9 hours for drafting the Reply. Not only was this an excessive amount of time for a Reply in this matter, petitioner's counsel continued to argue all that had previously been argued, refusing to accept that there was simply no proof of a vaccination in this case and overwhelming evidence that no vaccine was administered. As set forth above, Ms. Durant's billing rate has been set at $363 for 2017. Ms. Durant's billing will therefore be reduced to $363.00 per hour for 4 hours, or $1,452.00, plus $232.00 for her paralegal, for a total of $1,684.00 in supplemental fees.

### 3. Reasonable Costs

Petitioner requested a total of $2,222.39 in attorneys' costs. *See* Motion for Fees, ECF No. 36. The requested costs consist of $500 in fees to Catherine Shaer, M.D., the $400 court filing fee, $1,212.67 in costs associated with obtaining medical records, and $109.72 in costs associated with service of documents. Motion for Fees, ECF No. 36-2, at 1. Dr. Shaer is a medicolegal consultant who frequently works with Ms. Durant, and is well-qualified to advise on whether cases are compensable. *See Howard v. Sec'y of Health & Human Servs.*, No. 16-894, 2017 WL 4367159, at *3 (Fed. Cl. Spec. Mstr. Sep. 8, 2017). The undersigned finds petitioner's requested costs to be reasonable.

## IV. Total Award Summary

Based on the foregoing, the undersigned **awards the total of $26,086.49**,[7] representing reimbursement for attorneys' fees in the amount of $23,864.10 and costs in the amount of

---

[7] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of*

$2,222.39, in the form of a check made payable jointly to petitioner and petitioner's counsel, Leah Durant, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

<u>**s/ Mindy Michaels Roth**</u>
Mindy Michaels Roth
Special Master

---

*Health & Human Servs*., 924 F.2d 1029 (Fed. Cir. 1991).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.